HORGAN *et al.* v. MCKENZIE.

(*Common Pleas of New York City and County, General Term.*   January 15, 1892.)

1. CONSTRUCTION OF CONTRACT—CUSTOM.

A contract for the repair of a building called for a combination passenger and freight elevator, without more particular specification.   *Held*, that the contractor could not be made liable for a failure to put gates on the elevator, in the absence of proof that the understanding in the trade is to supply gates in the absence of specifications.   The testimony of witness that, in his opinion, gates are proper and necessary, is not sufficient.

2. SAME—BREACH—DAMAGES.

Where it appeared that plaintiff rented part of her premises before the time for completing repairs thereto, and the other portion after the repairs were made, after negotiating for several months prior thereto without obtaining as good an offer, a claim of damages for loss of rent on the failure of the contractor to complete the repairs in time is not sustained.

3. MECHANIC'S LIEN—ENFORCEMENT—EVIDENCE.

In an action to foreclose a mechanic's lien, allowing plaintiff to testify what the reasonable value of the work actually done was, though in excess of the contract price, if error, is harmless where only the contract price is allowed.

4. CONTRACT—ACTION FOR BREACH—EVIDENCE.

A contract for repairs to a building called for an "O. gas-engine of best capacity" to run the elevator, but no rate of speed or weight to be moved was specified.   The

engine put in was perfect, and was approved by the owner, but subsequently, not being considered strong enough, a larger one was substituted by the owner. It appeared that both sizes were used in running elevators of the kind in question. *Held*, in an action against the contractor for breach of the contract, that a finding for defendant should not be disturbed.

5. COSTS—EXTRA ALLOWANCE.
    Under Code Civil Proc. § 3253, providing for an extra allowance "in a difficult and extraordinary case," an extra allowance may be awarded in an action to foreclose a mechanic's lien. *Hagan* v. *Society*, 6 N. Y. St. Rep. 212, overruled. *Lawson* v. *Reilly*, 13 Civil Proc. R. 290, followed.

Appeal from special term.

Action by Arthur J. Horgan and others against Jane McKenzie to foreclose a mechanic's lien. Defendant appeals from a judgment entered upon a report of a referee in favor of plaintiffs. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER, J.

*David J. Newland*, for appellant. *Edward P. Orrell*, (*Abram Kling*, of counsel,) for respondents.

BOOKSTAVER, J. This action was brought to foreclose a mechanic's lien against the premises 765 Broadway for labor and material under a contract for the repair of those premises. The action was tried by a referee, and resulted in a decree of foreclosure. The appeal raises questions of fact, chiefly. The answer admitted the contract, but put in issue its performance, and the claim for extra work, except to the amount of $32, and set up four counterclaims. The first alleged that improper materials had been used, and the work had not been done according to the contract. The second alleged a failure to perform the work by the time limited in the contract, and claimed that by reason thereof defendant had been compelled to let the premises at a reduced price. The third claimed that plaintiffs had not done all the work and had not furnished all the materials required by the contract, and that she had been compelled to do such work and furnish such materials, to her damage; and the last alleged that the plaintiffs had failed to put in an engine of the capacity required by the contract, and in consequence she had been compelled to remove the one put in, and replace it with another of greater capacity. The referee allowed items under the first and third counter-claims amounting to $254.13, but appellant contends that she should have been allowed the sum of $75 which she paid for gates to the elevator.

The contract is silent as to whether there were to be gates to the car or not. It merely called for a combination passenger and freight car. If appellant had desired gates to it, she should have provided for it in her specifications. There is no proof in the case that, when they are not specified, the understanding in the trade is that they should be supplied, nor is there proof that such a car is incomplete without gates. It is true that one witness (the mechanic who afterwards put on the gates) testifies that in his opinion gates are proper and necessary on a combination car; but he says nothing as to what constitutes such a car, as understood in the trade.

It was also urged on the appeal that the ceiling in the store was not according to contract, in that the material was not of first quality. Two witnesses on behalf of the defendant testified that the material was of second or third quality, being knotty, and having pitch in it, as well as being the sappy part of the wood; but neither of these witnesses saw the ceiling until after it had two coats of paint on it, while the plaintiff Horgan and one Hirsch, the merchant who sold him the lumber, both testify that the material was of the best quality. There being such contradiction of testimony, we do not think the referee erred in finding as he did on this question.

Defendant also claims that she should have been allowed for loss in rent because the repairs were not completed by the time limited in the contract. But we do not think the referee would have been justified in finding that she

had lost rent for that reason. He has found that the work was completed about the 15th of April; the testimony is conflicting as to when it was finished, but we do not think that a very material question in this case. Our attention has not been called to any testimony tending to show that the defendant complained of delay while the work was going on, or, indeed, until this action was commenced, while it does not appear from the testimony of Harrell, the real-estate agent, that the property was placed in his hands to be let early in February, 1890, which was before the contract for repairs was made; that he rented all the lofts to a Mr. White early in March; and that the latter moved in about April 1, 1890. It is therefore clear that the fact that the repairs were not completed by the time fixed in the contract could have had no effect on the rental price of the lofts. According to Harrell the asking price for these lofts was $4,500; and the defendant, after negotiation, agreed to let them for $3,500. Harrell further testified that he had negotiated with several people for the store and basement; that these negotiations commenced as early as February, 1890; that in that month he had an offer for the premises, but that it was not as much as he afterwards obtained from Yee Long & Co., the present occupants; that he finally let the store premises to them for $4,000 on the 20th of April, 1890. In view of these facts the opinion of this witness and another real-estate broker that they ought to bring from $4,500 to $9,000 amounts to little. It is clear that the defendant obtained more for the premises on the 20th of April than she could have done at any time before.

Under the circumstances of this case, we do not think the referee erred in allowing plaintiff Horgan to testify what the reasonable value of the work actually done was, even although it showed that it was worth more than the contract price. But, if it was error, it did the defendant no harm, as the referee only allowed the contract price for it.

While there is a conflict of evidence as to whether the plaintiffs did the extra work they claimed or not, yet we can see no reason why his conclusions as to this should be disturbed. There is certainly sufficient evidence to support them.

The only remaining question arises on the testimony given under the fourth counter-claim. The specifications required the plaintiffs to "furnish an Otto gas-engine of best capacity to run the elevator, and guaranty the same to the owner; also, take out the present car, and put in a combination passenger and freight car." If, instead of the phrase "best capacity," the contracting parties had inserted a provision requiring the engine to be of a definite horse-power, then there would have been no ambiguity in this specification. But as it stands, the power of the engine to be supplied is left undetermined. There is nothing in the specification which provides for any definite rate of speed, nor for any definite weight to be moved. It is obvious that the rate of speed, and the ability to carry weight required, will vary with the different uses to which the premises are or might be put. Thus, if it were chiefly for the purpose of carrying passengers, a greater rate of speed would be required than if it were merely to lift weights; and, again, the weights to be put upon the elevator would vary with the occupation of the lessees, a metal worker requiring an engine and elevator capable of carrying heavier weight than would a fancy goods manufacturer. From the evidence it appears that the engine as originally put in by the plaintiffs moved the elevator with a normal load about 50 feet a minute. Complaint having been made by the lessee to the defendant of the slowness of movement, she had the pulley drum regulating the movement of the engine enlarged, thus increasing its speed, but, of course, in a gas-engine, diminishing its ability to carry the load, and then it was complained of as being too weak. Mr. Manning, one of the members of the firm which put in the original engine, and also the substituted, was called as a witness by the defendant, and testified they had put in about as many

horse-power engines as 7 horse-power engines for the combination passenger and freight elevator, and that there were about as many 7's as 10's for that combination, and that they had recommended the 7 horse-power engines in buildings of the same kind where they were running for passenger and freight service, and that such engines suited some people and not others. It was also testified by the plaintiff Horgan, and not contradicted on behalf of the defendant, that the 7 horse-power engine was put in by the direction of Mrs. McKenzie after a conversation with her. It also appears from the evidence that the 7 horse-power engine was removed, and a 10 horse-power engine put in, several months after the contract, without notice to the plaintiffs of the defendant's intention to make the change. It is true that the defendant, towards the latter part of June, notified the plaintiffs that the engine, in her judgment, was not of sufficient capacity, and invited them to make further experiments with it; but it appears in the testimony that such experiments had been made before the engine was turned over to the defendant, and it was then supposed by the plaintiffs to be sufficient. It was not claimed on the trial that the engine was not a perfect engine of its kind, and properly put up; the only complaint was as to its capacity. In view of the indefiniteness of the specifications, making no requirement either as to speed or weight to be carried, the perfect condition of the engine put in, and the testimony in this case, we cannot say that the referee erred in his conclusion as to this matter. On the argument, it was said that the specifications were drawn by the plaintiffs, and therefore should be construed most strongly against them. But the defendant was bound, if there was any ambiguity in the specifications as submitted to her, to have all such ambiguities cleared up before she entered into the contract, and the ambiguity is as much owing to her oversight as to theirs. Where a contractor has in good faith intended to comply with a building contract, and has substantially so done, although there may be slight defects caused by inadvertence or unintentional omissions which are susceptible of remedy without difficulty, so that an allowance out of the contract price will give to the other party a full indemnity, the contractor may recover the contract price, less the damages of such defects. *Woodwarth* v. *Fuller*, 80 N. Y. 312. Such seems to have been the intention of the contractors in this case. We, therefore, cannot say that the referee erred in his conclusions in this case, and the judgment should be affirmed, with costs.

On the argument it was claimed that the order granting the plaintiffs' attorney an extra allowance for costs was improperly made, and the case of *Hagan* v. *Society*, 6 N. Y. St. Rep. 212, was cited in support of this contention. But that case was decided under the law as it stood before 1885; and this court has decided in *Lawson* v. *Reilly*, 13 Civil Proc. Rep. 290, that the prevailing party is entitled to an extra allowance if the action be difficult and extraordinary, under section 3253 of the Code, and that that section applies to all civil actions. The judgment should therefore be affirmed, with costs.